lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-40095-03-JAR |
| | ) | |
| CHUN XIOA YUAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER DENYING
## DEFENDANT'S MOTION TO SUPPRESS CONFESSION

Defendant Chun Xioa Yuan moves the Court for an order suppressing his confession made to law enforcement officers and requesting an evidentiary hearing (Doc. 61). The government has responded (Doc. 63). An evidentiary hearing was held August 14, 2006. The Court has reviewed the evidence and the submissions of the parties and is prepared to rule. For the reasons set forth in detail below, defendant's motion is denied.

### *Facts*

Defendant is a citizen of the People's Republic of China, and is in the United States as a legal resident alien of Canada. His native language is Cantonese and he speaks no English.

On June 27, 2004, two Chinese nationals driving a black Lexus were stopped on Interstate 70 by the Russell County, Kansas Sheriff's Department for a traffic violation. As the deputy was about to conduct a consent search of the vehicle's trunk, the driver, a woman named Cui Qin Zhang, drove away at a high speed, with her passenger, Shao Mou Chen. The two led the deputy on a high-speed chase that ended when the vehicle crashed. Zhang and Chen were

thrown from the vehicle, as were quantities of controlled substances.  Troopers from the Kansas Highway Patrol investigated the accident and searched the car, finding fifteen kilograms of cocaine and 69,482 dosage units of ecstacy.

Zhang was charged with drug-related offenses from the stop and the accident.  The case was tried to a jury and Zhang was found guilty and was eventually sentenced to fifteen years in prison.  Chen pled guilty to similar charges, testified against Zhang at trial, and was sentenced to 81 months in prison.

On December 28, 2005, defendant was indicted for conspiracy to possess and distribute, and possession with intent to distribute, the drugs found in the Lexus driven by Zhang, as well as for 139 marijuana plants.  On January 6, 2006, defendant was arrested at the Los Angeles International Airport ("LAX") as he disembarked a flight from Toronto, Canada.  Defendant was arrested at approximately 4:00 p.m. on a Friday afternoon, and immediately transported to the DEA offices at the Roybal Federal Office Building in downtown Los Angeles, where he was interviewed.

Detective Ed Sun, with the Los Angeles Police Department Internal Affairs, participated in the ongoing investigation of a Chinese organized crime group related to the Zhang and Chen case.  According to discovery materials in this case, both Zhang and Chen were acquainted with defendant.  Zhang and defendant had, in fact, been romantically involved sometime before the accident, but had ended their relationship prior to June 27, 2004.  Detective Sun testified that he was familiar with defendant, who was in "constant contact" with Zhang via phone calls while she was incarcerated pretrial.  Detective Sun testified that in the phone calls between defendant and  Zhang, she spoke Mandarin during the first 20 to 30 calls; defendant switched to a different

2

dialect that the detective did not understand.[1]

On January 6, 2006, Detective Sun received a phone call from DEA Agent Randy Osborne, who informed him that defendant had tried to board a flight in Toronto, but was detained; he missed his flight and was on a subsequent flight to Los Angeles. Agent Osborne was arranging to have defendant arrested at LAX on a Kansas arrest warrant issued after the Indictment brought against defendant.

ICE Agent Rick Mann detained defendant on the plane after it landed and transported him to the Roybal Building to be interviewed. Detective Sun, who is certified in Mandarin, conducted the interview. Detective Sun asked defendant if he spoke Mandarin and defendant replied "yes." Detective Sun testified that defendant was calm and cooperative and not unusually tired or scared. In their initial exchange, defendant had no difficulty communicating and never expressed a preference for another dialect. After he obtained basic booking information, Detective Sun took defendant to an interview room, where charts, graphs and photos of the alleged crime organization and the people involved were displayed.

Detective Sun had defendant sit in the interrogation room alone for 15 to 20 minutes, then returned with another detective and two DEA agents. Detective Sun gave defendant a *Miranda* waiver form provided by the DEA, printed in English and Mandarin. He read defendant his rights in Mandarin and defendant signed the waiver form. At first, defendant was evasive and denied being involved with the organization. Detective Sun then explained the evidence that law enforcement had against defendant, including surveillance and the jail calls from Zhang.

---

[1]Sun testified that there are three main Chinese dialects: Mandarin, Cantonese and Fou Jou. Sun only speaks Mandarin.

Defendant asked for a cigarette break, then said he would tell the officers what he knew. Defendant told Detective Sun that he was traveling to Los Angeles to party with some girls, as his wife had just lost a baby.  Defendant told Detective Sun about several trips he took with Zhang from Los Angeles to Houston.  The couple would rent a car and transport large sums of cash—$4,000 to $8,000 per trip—concealed in the vehicle doors.  These so-called "money trips" were made for Tat Hi Chan, a high-level ecstacy dealer.  Defendant also told the officers that he would buy ecstacy at Los Angeles night clubs for Chan, who would give him pills at no charge. Although he did not admit to owning or having an interest in the drugs found in the wrecked Lexus, defendant claimed to know to whom they belonged.  Defendant told the officers that he called co-defendant Bo Feng after Zhang wrecked the Lexus, but Feng had shut off his phone. Feng's partner, Kwan Lap Yu, told defendant that Yu was at the same level of drug dealing as Feng and that Feng went into hiding after the arrest of Zhang and Chen.  Yu told defendant that Feng was working for individuals who supplied drugs to Feng, who then used Zhang and Chen to transport the drugs that were confiscated from the wrecked Lexus.  Defendant also told the officers that Feng was known as a grower of marijuana and showed defendant how to grow marijuana.

Detective Sun testified that the interview lasted approximately 3 to 4 hours.  Defendant never asked to stop the interview, except to take a bathroom break and several smoke breaks. The officers brought defendant some food from the vending machines when he told them he was hungry.  Towards the end of the interview, defendant appeared to back-track, and asked the officers to "give [him] a weekend."  The interview then ended at approximately midnight on Friday night.  Defendant appeared before the Federal Magistrate the following Monday morning.

4

Detective Don Barfield of the Los Angeles Police Department Narcotics Intelligence Task Force also participated in the interview with defendant.  Detective Barfield testified that he arrived at the DEA office at approximately 6:00 p.m., where he met with ICE Agent Mann, who had arrested defendant aboard the airplane.  Detective Barfield testified that he would feed questions to Detective Sun to ask defendant in Mandarin.  He testified that defendant suffered no threats or mistreatment, and that he was treated professionally and provided with food and smoke breaks.  Defendant never appeared afraid or tired; he was inquisitive about why he was there and was curious, alert and focused.  Detective Barfield took notes during the interview.

### Discussion

The government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary.[2]  A confession is only involuntary when "the police use coercive activity to undermine the suspect's ability to exercise his free will."[3]  A determination of voluntariness of a defendant's statement is made after examining several factors including: (1) the defendant's age, education and intelligence; (2) the length of the detention and interrogation; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to or threatened with any physical punishment.[4] Under 18 U.S.C. § 3501(b), the following factors are also relevant to a determination of

---

[2]*United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (citing *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004)).

[3]*United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999) (quoting *United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998)).

[4]*United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

voluntariness of a confession: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment; (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession; (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him; (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.  The determination of voluntariness is based on the totality of the circumstances; no single factor is determinative.[5]  Coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the due process clause.[6]

Defendant contends that his fatigue, unfamiliarity with Mandarin Chinese, and fear of the police renders his confession involuntary.  The Court disagrees.  It appears that defendant is a mature, educated man of at least average intelligence.  The testimony of the detectives belies his claim of excess fatigue, as defendant neither mentioned being overly tired, nor did he appear fatigued to the detectives.  Defendant was questioned for no more than four hours in a non-hostile manner, without restraint and in a comfortable setting.  Defendant appeared calm and was able to express himself clearly.  He did not indicate that he could not understand Mandarin and never asked Detective Sun to speak in another dialect.  Detective Sun had heard defendant converse in Mandarin with Zhang in numerous phone calls.  Defendant was advised of his

---

[5]*Schneckloth*, 412 U.S. at 226.

[6]*See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *United States v. Thomas*, Case No. 05-40087, 2005 WL 2989288, at *3 (D. Kan. Oct. 19, 2005).

constitutional right to silence, in writing, prior to being questioned and he waived that right.

Although language barriers may inhibit a suspect's ability to knowingly and intelligently waive

his *Miranda* rights, there is no indication that defendant did not understand his rights both read

to him and written in Mandarin.[7]  He was not threatened physically, nor was any mental coercion

applied.   None of the factors used to determine voluntariness of a statement support suppression

of defendant's confession.

Likewise, the statutory factors set forth in § 3501 also support admission of defendant's

confession.  The time that elapsed between defendant's arrest and his arraignment was not

unduly long, in light of the fact that defendant was arrested late on a Friday afternoon, that the

officers most likely could not have gotten defendant before a Magistrate before the close of

business that day, and that defendant made his first appearance the next business day.  Defendant

was advised of the nature of the offense with which he was charged, and was specifically advised

that he had the right to not talk to agents as well as the right to counsel.  Although defendant was

without counsel at the time of his confession, this was after he had waived such rights, and not

because counsel had been denied him.

Given all the circumstances, the Court is convinced that defendant's free will was not

subverted and that his confession was voluntary.  Defendant's motion to suppress is therefore

denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to

---

[7]*See United States v. Bustillos-Munoz,* 235 F.3d 505, 517 (10th Cir. 2000) (waiver knowing and intelligent because imperfect translation into a language which defendant understood conveyed the substance of the rights waived); *United States v. Hernandez,* 93 F.3d 1493, 1502 (10th Cir. 1996) (same); *United States v. Hernandez,* 913 F.2d 1506, 1510 (10th Cir. 1990) (acknowledging that language barriers may inhibit a suspect's ability to knowingly and intelligently waive his *Miranda* rights).

7

suppress confession (Doc. 61) is DENIED.

IT IS SO ORDERED.

Dated this __19th__ day of September 2006.

_S/ Julie A. Robinson_____
Julie A. Robinson
United States District Judge

9