lml

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-40095-01,03-JAR |
| | ) | |
| BO CHENG FENG and | ) | |
| CHUN XIOA YUAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on several pretrial motions filed by defendant Bo Cheng Feng, joined by defendant Chun Xioa Yuan: Motion to Change Venue (Doc. 49); Motion for Discovery (Doc. 52); Motion to Dismiss Count 1 (Doc. 53); Motion for Bill of Particulars (Doc. 54); Motion to Sever (Doc. 69).  A hearing was held on August 14, 2006, after which time the Court took the matters under advisement.  Counsel for defendant Feng, Alex Kessel, was subsequently disqualified,[1] and new counsel was appointed.  After several extensions of time were granted to file additional or supplemental pretrial motions, a second motions hearing was held on September 28, 2007, at which time counsel for both defendants stated that they had no additional submissions on the pending motions.  Prior to that hearing, defendant Feng filed a Motion for Recess, Continuance or in the Alternative, Withdrawal (Doc. 98), and defendant Yuan filed a Motion for Turnover of Exculpatory Evidence (Doc. 100) and Request for *Giglio*

---

[1](Doc. 77.)

Information (Doc. 101).  The Court ruled on several motions from the bench, and took the

remaining motions under advisement.  After considering the parties' submissions and arguments,

the Court is prepared to rule.

*Background*

On June 27, 2004, two Chinese nationals driving a black Lexus were stopped on

Interstate 70 by the Russell County, Kansas Sheriff's Department for a traffic violation.  As the

deputy was about to conduct a consent search of the vehicle's trunk, the driver, a woman named

Cui Qin Zhang, drove away at a high speed, with her passenger, Shao Mou Chen.  The two led

the deputy on a high-speed chase that ended when the vehicle crashed.  Zhang and Chen were

thrown from the vehicle, as were quantities of controlled substances.  Troopers from the Kansas

Highway Patrol investigated the accident and searched the car, finding fifteen kilograms of

cocaine and 69,482 dosage units of ecstacy.

Zhang was charged with drug-related offenses from the stop and the accident.  The case

was tried to a jury and Zhang was found guilty and was eventually sentenced to fifteen years in

prison.  Chen pled guilty to similar charges, testified against Zhang at trial, and was sentenced to

81 months' imprisonment.

On December 28, 2005, defendants Feng and Yuan were indicted for conspiracy to

possess and distribute, and possession with intent to distribute, the drugs found in the Lexus

driven by Zhang, as well as for 139 marijuana plants.

*Analysis*

1.      **Motion to Change Venue**

Defendants request that the Court change venue to the Central District of California.  The

2

cocaine and ecstacy charges derive from the June 27, 2004 seizure of those drugs from alleged

co-conspirators Zhang and Chen, during a traffic stop in Kansas.  Chen told the government that

defendant Feng approached him to transport cocaine and ecstacy from Los Angeles to Ohio, that

Feng placed the drugs in the car, and was to pay Zhang and Chen for the delivery.  The

marijuana allegation arises out of the March 2005 seizure of 139 marijuana plants from a garage

in San Gabriel, California.  Defendants argue that the proper venue for the conspiracy to

distribute marijuana charge is in the Central District of California because the crime occurred in

Los Angeles.  They also contend that there is no evidence of any overt acts committed in Kansas

in furtherance of a conspiracy to distribute the marijuana seized in Los Angeles, and that the

activity connecting the alleged conspiracy to the district of Kansas is happenstance as the

marijuana at issue was found in California.

Defendants first assert that venue is not proper in the District of Kansas.  Defendants

argue that two recent Supreme Court decisions, *United States v. Cabrales*[2] and *United States v.*

*Rodriguez-Moreno,*[3] which differentiate between essential and non-essential elements of

offenses, effectively eliminate the "overt act" test for determining venue in a drug conspiracy

charge.  The Court disagrees.

In *United States v. Cabrales,* the Supreme Court found that Missouri was not the proper

venue for a money laundering crime that, from start to finish, occurred entirely in Florida.[4]

Citing 18 U.S.C. § 3237(a), which deals with continuing crimes, the Court explained that

---

[2] 524 U.S. 1 (1998).

[3] 526 U.S. 275 (1999).

[4] *Cabrales*, 524 U.S. at 6.

offenses "begun in one district and completed in another" may be "prosecuted in any district in which [the] offense was begun, continued, or completed."[5]  In explaining why venue was not proper in Missouri on the money laundering count, the Court emphasized that money laundering "might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them to another."[6]  But in *Cabrales*, the defendant did not acquire the funds in Missouri nor did she transfer the funds from Missouri to Florida—she only laundered the money through a series of transactions that took place entirely in Florida.[7] The Court determined that venue was not proper in Missouri because the defendant's money laundering activities occurred after the commencement and completion of a drug conspiracy offense committed by others.[8]

In *United States v. Rodriguez-Moreno,* the crime was the use of a gun during a crime of violence under 18 U.S.C. § 924(c) that spanned a number of states.[9]  The defendant kidnaped an individual in Texas, who was transported to New Jersey then Maryland.  While in Maryland, defendant obtained a gun and used it to threaten his captive.  The defendant was ultimately tried and convicted in New Jersey.  The Supreme Court found venue was proper in any of the districts in which this crime of violence was committed.[10]

The *Rodriguez-Moreno* Court held that venue in New Jersey was proper because the

---

[5]*Id.* at 7.

[6]*Id.* at 8.

[7]*Id.*

[8]*Id.*

[9]*Rodriguez-Moreno*, 526 U.S. at 278.

[10]*Id.* at 281.

commission of the crime of violence, the kidnaping charge, was an essential element of the § 924(c) gun charge.[11]  In addition, the gun was used "during and in relation to" the kidnaping, and because the kidnaping charge was a continuing offense, venue was held to be proper in any district in which the kidnaping "was begun, continued, or completed."[12]  The Court distinguished the facts in *Cabrales* by characterizing the underlying drug conspiracy that generated the criminally-derived proceeds as a "circumstance element" of money laundering, which was insufficient to establish venue.[13]  In *Rodriguez-Moreno*, however, the underlying crime of violence (kidnaping) was an "essential element" of the § 924(c) firearm offense, providing an adequate basis for venue.[14]

Defendants argue that the principles of *Cabrales* and *Rodriguez-Moreno* dictate a finding that there is no jurisdiction in Kansas because all of the elements of the conspiracy are alleged to have occurred in California.  Defendants are charged with conspiracy in violation of 21 U.S.C. § 846.  The elements of that offense include agreement and intent.  Since an overt act in furtherance of the drug conspiracy is not an element of this offense, defendants argue that venue is improper because no element occurred in Kansas.  Defendants argue that the nature of the offense as defined by its elements requires an agreement to commit a violation of the controlled substances law and that agreement allegedly occurred in California.  Because the act of transporting the drugs through Kansas is not an element of the offense, defendants argue, there is

---

[11]*Id.*

[12]*Id.* at 282.

[13]*Id.* at 280, n.4.

[14]*Id.* at 281.

no connection with this district.

The Tenth Circuit has addressed the issue of proper venue in a drug conspiracy case, including the "overt acts" test for determining venue, subsequent to *Cabrales and Rodriquez-Moreno.* In *United States v. Hernandez-Dominquez,*[15] the court reiterated that venue can be proper, in a prosecution for possession with intent to distribute and conspiracy to distribute, in the district in which the defendant was arrested in a vehicle transporting drugs, even though the illicit agreement underlying the conspiracy had allegedly been formed in another state.[16]

Further, in *United States v. Cryar,*[17] the Tenth Circuit held that venue over charges of attempted sexual abuse was proper in the district in which the offense was interrupted.[18] The key question in determining the issue was whether the offense of attempted sexual abuse was a continuing offense. The court found that 18 U.S.C. § 3237 applied and prosecution would thus be permitted in any district in which an overt act in furtherance of the conspiracy was committed, if the charge at issue were determined to be a continuing offense.[19] Thus, the Tenth Circuit has recently held that the key to using the "overt acts" test to determine venue is whether the charge at issue is a continuing offense. Because conspiracy is a continuing offense,[20] venue in Kansas is proper.

_____

[15]No. 99-3305, 2001 WL 13278 (10th Cir. Jan. 5, 2001), *cert. denied,* 532 U.S. 950 (2001).

[16]*Id*. at *5.

[17]232 F.3d 1318 (10th Cir. 2000).

[18]*Id*. at 1322-23.

[19]*Id*. at 1322.

[20]*See United States v. Jaynes*, 75 F.3d 1493, 1505 (10th Cir. 1996) ("Conspiracy, . . . is the prototypical continuing offense.") (citation omitted).

6

The Court is not persuaded by defendants' arguments.  In fact, the Fourth Circuit rejected similar arguments made by defendants in *United States v. Mitchell.*[21]  In rejecting the defendant's argument that *Rodriguez-Moreno* and *Cabrales* imposed a significant limitation on permissible venues, the court held that venue was proper on a drug conspiracy count in the district where defendants transported drugs.[22]  The court noted that significantly, both Supreme Court cases emphasized that the law regarding venue in conspiracies remains the same: venue is proper for a conspiracy wherever the agreement was made or where any conspirator carried out overt acts.[23]  In *Mitchell*, the drug conspiracy involved the sale of drugs in Washington, D.C., transported through Virginia and distributed in North Carolina.[24]  The court held that the transportation of the drugs through Virginia "was an act in furtherance of the conspiracy and was essential to the distribution of those drugs in North Carolina."[25]  The court distinguished the case from the facts in *Cabrales* because Mitchell was charged with a drug conspiracy count that was "ongoing and intertwined with the money laundering count" and the conspiracy continued for approximately eleven years and stopped only upon Mitchell's arrest.[26]  In *Cabrales*, the defendant was not charged in connection with the drug conspiracy—the only allegation was that defendant laundered money that resulted from a completed drug conspiracy.[27]

---

[21]No. 02-4618, 2003 WL 21757309 (4th Cir. July 31, 2003).

[22]*Id*. at *5.

[23]*Id.*

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

7

The Court agrees with the reasoning of the Fourth Circuit and concludes in this case that the acts of defendants Feng and Yuan and their alleged co-conspirators in the District of Kansas were essential in furthering the drug conspiracy and are sufficient to establish venue on the drug conspiracy counts.  It is settled principle that the overt act of one conspirator in the district suffices to establish venue for all other co-conspirators in that district.[28]  The overt act or acts necessary to support venue in a conspiracy case do not have to be substantial.  Defendants allegedly engaged in a drug conspiracy that involved the sale of drugs in California, the transportation of these drugs across the United States, including through Kansas, and the distribution of the drugs in Ohio and other states.  The transportation of the drugs through Kansas by co-conspirators Zhang and Chen was an act in furtherance of the conspiracy and essential to the distribution of those drugs in Ohio and elsewhere.  The facts of this case are distinguishable from *Cabrales* because defendants are charged with a drug conspiracy count that was ongoing.  In *Cabrales*, the defendant was not charged in connection with the drug conspiracy, but with laundering money that resulted from a completed drug conspiracy.

In sum, a co-conspirator's transportation of drugs through Kansas is a sufficient nexus to Kansas to allow for indictment and prosecution in this district on conspiracy drug charges.  Accordingly, defendants' motion to change venue as improper is denied.

Defendants argue alternatively that if venue is proper in Kansas, it should be changed based on convenience, pursuant to Fed. R. Crim. P. 21(b).  That rule provides that "the court may transfer the proceeding, or one or more counts, against the defendant to another district for the

---

[28]*See, e.g., United States v. Miller,* 111 F.3d 747, 753, n.8 (10th Cir. 1997); *United States  v. Lopez,* No. 02-40021-RDR, 2002 WL 31498984, at *2 (D. Kan. Sept. 5, 2002); *United States. v. Hernandez-Dominquez,* No. 98-40116-RDR, 1999 WL 803151, at *1 (D. Kan. Sept. 2, 1999).

convenience of the parties and witnesses and in the interest of justice."[29]

The proper venue for criminal actions is normally "in the district in which the offense was committed."[30] As previously established, venue is proper in conspiracy prosecutions in any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed.[31]  The Supreme Court has suggested that the following factors should be considered in determining whether a requested transfer in a criminal case is in the interest of justice: (1) location of the defendants; (2) location of possible witnesses; (3) location of events likely to be an issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless case is transferred; (6) expense of the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.[32]  The burden is on the defendant to justify a transfer under Rule 21(b).[33]  "[C]hange of venue in a criminal case is discretionary, and a trial judge's decision on the matter is entitled to deference."[34]

Defendants argue it is more convenient for the case to be tried in California, as most of the witnesses are in California and it is easier to get an interpreter in that state.  The government

---

[29]Fed. R. Crim. P. 21(b).

[30]Fed. R. Crim. P. 18.

[31]*Miller,* 111 F.3d at 753, n.8.

[32]*Platt v. Minn. Mining & Mfg. Co.,* 376 U.S. 240, 243-44 (1964).

[33]*In re United States,* 273 F.3d 380, 388 (3d Cir. 2001).

[34]*United States v. Williams,* 897 F.2d 1034, 1036 (10th Cir. 1990) (quoting *United States v. Hunter,* 672 F.2d 815, 816 (10th Cir. 1982)).

opposes change of venue for the convenience of the parties, and submits that these factors are either neutral or support retaining venue in Kansas.

In applying the various factors noted above to the circumstances of this case, the Court concludes that a transfer is not appropriate. The government has stated that, in addition to the witnesses of the first interdiction in Kansas, the government will likely offer witnesses from California, many of whom will be custodians of records.  Both defendants are presently held in custody in Kansas.  Although there appears to be no question the conspiracy was based in California, the alleged organization involved trafficking throughout the United States.  Most of the numerous documents and records are located in California, but the government has made arrangements for defense counsel to have access to these materials.  Defendants are represented by court appointed counsel in Topeka and Wichita.

By contrast, transfer of venue to California would result in great expense to the government.  Because of the heavy caseload in that district, the government submits that it is unlikely that the United States Attorney's Office for the Central District of California would be willing or able to take over this case, which would necessitate the Topeka prosecutor and his staff to be detailed to Los Angeles.  Accordingly, the Court finds that the factors applicable in this case do not overwhelmingly command granting the defendants' motion.

**2.      Motion for Discovery**

At the September 28, 2007 hearing, the Court took the first discovery matter under advisement, and is now prepared to rule.  The Court ruled from the bench on the remaining matters:

**a.      Grand Jury Minutes and Testimony**

Defendants request: (1) all books, papers, documents, statements and tangible objects containing the grand jury testimony of any witness who testified before the Grand Jury and who the government expects to testify at trial; and (2) all books, papers, documents, statements and tangible objects containing the grand jury testimony of any other witnesses not included herein above whose testimony before the grand jury will be relevant or material to the preparation of the defense of defendant.  At the hearings, defense counsel clarified that they are only concerned with *Giglio* materials and statements.  The government opposes the request.

The Tenth Circuit has held that "'[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'"[35]  The Court finds that defendants have failed to show that this broad request for grand jury materials is necessary to avoid injustice or to advance a substantial interest in this case.  Defendants have attempted to particularize their request by limiting it to *Giglio* materials and statements, but offer no specifics as to the nature of what they are seeking, other than anything that is exculpatory.  Such speculation cannot establish a "particularized need" for the production of grand jury materials.  Moreover, exculpatory evidence known to the government must be produced to defendant by the government, including grand jury materials.[36]  Defendants' motion is denied, except to the extent such material is *Brady* or *Giglio* material.

       **b.**      **Witness Lists, Statements and Related Matters**

---

[35]*In re Lynde*, 922 F.2d 1448, 1451-52 (10th Cir. 1991) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)).

[36]*See* General Order of Discovery and Scheduling (Doc. 7 at 2.)

- the parties are to exchange the names and qualifications of expert witnesses no later than 30 days before trial;

- defendants' request for names and addresses of all persons interviewed in connection with this litigation is overruled and denied, except to the extent such information is *Jencks* or *Brady* material;

- defendants' request for names and addresses of all witnesses, along with statements of the witnesses, is overruled and denied, except to the extent such information is *Jencks* or *Brady* material;

- defendants' request for plea agreements and PSIRs of co-defendants and related defendants is granted with respect to unsealed plea agreements and overruled and denied with respect to the PSIRs and sealed pleadings; and

- defendants' request for impeachment information regarding witnesses, including cooperating defendants, is granted.

**3.     Motion to Dismiss Count 1 of the Indictment**

Defendants are named in a First Superseding Indictment alleging in Count 1 that they knowingly and willfully conspired with others to distribute controlled substances, to wit, 15 kilograms of cocaine, 15 kilograms of ecstacy, and 139 marijuana plants in violation of 21 U.S.C. § 846; Count 2 charges that they knowingly possessed with intent to distribute 15 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1); and Count 3 charges that they

knowingly possessed with intent to distribute 15 kilograms of ecstacy in violation of 21 U.S.C. § 841(a)(1).

Offenses that are of "the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan" may be charged in separate counts of one indictment.[37] "A duplicitous indictment charges the defendant with two or more separate offenses in the same count."[38] "The dangers of duplicity are three-fold: (1) [a] jury may convict a defendant without unanimously agreeing on the same offense; (2) [a] defendant may be prejudiced in a subsequent double jeopardy defense; and (3) [a] court may have difficulty determining the admissibility of evidence."[39]

Defendants contend that Count 1 of the Superseding Indictment is duplicitous because the marijuana allegation contained within is a crime separate and distinct from the conspiracy to distribute cocaine and ecstacy.  Defendants argue that this language alleges two different conspiracies in one count and affords the government the opportunity to "bootstrap" their involvement with marijuana to the conspiracy involving cocaine and ecstacy.

The Court disagrees with defendants' characterization of Count 1.  The Tenth Circuit has explained that:

> Listing three different drugs, or three different crimes, in a single count of conspiracy is not necessarily duplicitous.  A charge of conspiracy is an allegation that an agreement occurred to commit one or more crimes.  In other words, it is the agreement which constitutes the conspiracy, not the individual drug crimes that are

---

[37]Fed. R. Crim. P. 8(a).

[38]*United States v. Trammel*, 133 F. 3d 1343, 1354 (10th Cir. 1998) (citation omitted).

[39]*Id.* (quoting *United States v. Wiles*, 102 F.3d 1043, 1061 (10th Cir. 1992)).

the object of the conspiracy.[40]

In this case, Count 1 of the Superseding Indictment charges defendants with entering into a single conspiracy to distribute each of the drugs listed.  Accordingly, the actual crime charged in Count 1 is the agreement aspect of the conspiracy itself, and that the distribution of cocaine, ecstacy and marijuana constitute the means to carry out that agreement.  Although the marijuana was not present when defendant's co-conspirators were arrested in Kansas, the government contends that the evidence will show that marijuana was part of the same overarching conspiracy to distribute controlled substances across state lines.  Moreover, whether there is a single or multi-conspiracy is a jury question.[41]  Any questions arising after the evidence comes in at trial may be addressed by the use of special verdict forms that allow a jury to express unanimity as to each of the separate drugs or crimes listed.[42]  Defendants' motion to dismiss is denied.

### 4.      Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure allows a court to issue a bill of particulars at its discretion.  The bill of particulars is designed to "inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense."[43]  The court's primary concern when reviewing a motion for a bill of particulars is whether the defendant has: (1) a meaningful opportunity to prepare his or her defense, (2) assurances against unfair surprise

---

[40]*United States v. Kell*, 41 Fed. App'x 350, 354 (10th Cir. 2002) (citing *Braverman v. United States*, 317 U.S. 49, 53-54 (1942)).

[41]*United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997).

[42]*Trammel*, 133 F.3d at 1353-54.

[43]*United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (citation omitted).

14

to the defendant at trial, and (3) protection from double jeopardy dangers.[44]  The purpose of a bill of particulars is not to obtain discovery, evidentiary detail of the government's case, or information regarding the government's legal theories.[45]

Defendants focus on the portions of the Superseding Indictment contained in Count 1 with respect to the charge of conspiracy to distribute marijuana.  At the hearing held on September 28, 2007, the government noted that it has turned over substantially more materials to defense counsel since the time the instant motion was filed on March 27, 2006.  Accordingly, the government stated, it believes defense counsel now has the detailed information it is requesting in its motion.  Defense counsel did not dispute the government's position, but stated that the details involving the marijuana charges were "important" to both defendants.

The grant or denial of a defendant's request for a bill of particulars rests within the court's sound discretion.[46]  In this case, the Superseding Indictment identifies the location of the offense and the dates during which the conspiracy was ongoing.  It is clear as to the names of the co-conspirators and co-defendants that are allegedly involved.  All of the controlled substances that are allegedly part of the conspiracy are named, along with the amounts of each drug recovered.  As represented by the government, discovery provided to defendants disclose even further the details regarding the conspiracy.  Accordingly, defendants' motion for a bill of particulars is denied.

5.      **Motion to Sever**

---

[44]*United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983).

[45]*United States v. Anderson*, 31 F. Supp. 2d 933, 938 (D. Kan. 1998).

[46]*United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992).

15

In a conspiracy case, there is a preference that defendants charged together be tried together.[47]  "'In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials.'"[48]  To show prejudice, defendants must establish that "there is a serious risk that a joint trial would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence."[49]

In support of his motion to sever his trial from defendant Yuan's, defendant Feng expressed concern that he will be unjustifiably prejudiced by the introduction of Yuan's post-arrest confession, in which Yuan implicated not only himself, but defendant Feng as well.[50]  In the alternative, he moves, pursuant to *Bruton v. United States*,[51] for an order excluding or redacting any confessions from non-testifying co-defendants.

Defendant Feng has not shown a serious risk that a joint trial will compromise a specific trial right or that a jury will be prevented from making a reliable judgment about guilt or innocence.  Moreover, the Court sees no reason at this point in the proceedings why redaction of certain statements by co-defendant Yuan would not be sufficient to comply with *Bruton* and to avoid unfair prejudice.  The government stated that it would only offer defendant Yuan's statements to incriminate Yuan, and conceded at the September 28, 2007 hearing that the six

---

[47]*United States v. Small*, 423 F.3d 1164, 1181 (10th Cir. 2005) (citation omitted).

[48]*Id.* at 1181(quoting *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986)).

[49]*Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[50]Defendant Yuan's Motion to Suppress his confession was denied by the Court on September 19, 2006 (Doc. 71).

[51]391 U.S. 123 (1968).

16

statements by Yuan outlined in his Motion to Sever should not be admissible,[52] adding that it had enough other evidence against defendant Feng to offer at trial.  Accordingly, defendant's motion to sever is denied.  As a precaution, however, the Court will conduct a hearing prior to trial to establish the admissible parameters of defendant Yuan's statement.

### 6.        Defendant Yuan's Motions

For the reasons stated on the record, the Court denies without prejudice defendant Yuan's motion for turnover of exculpatory evidence, and grants his motion for *Giglio* information.

### 7.        Motion for Continuance

For the reasons stated on the record, the Court grants defendants' motion for continuance. Trial is set for February 5, 2008.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Change of Venue (Doc. 49), Motion to Dismiss Count 1 (Doc. 53), Motion for Bill of Particulars (Doc. 54) and Motion to Sever (Doc. 69) are DENIED;

**IT IS FURTHER ORDERED** that defendants' Motion for Discovery (Doc. 52) is GRANTED IN PART AND DENIED IN PART;

**IT IS FURTHER ORDERED** that defendant Yuan's Motion for Turnover of Exculpatory Evidence (Doc. 100) is DENIED without prejudice, and his Request for *Giglio* Information (Doc. 101) is GRANTED;

**IT IS FURTHER ORDERED** that trial is set for **February 5, 2008.**

IT IS SO ORDERED.

Dated this  19th  day of November 2007.

---

[52](Doc. 64 at 3-4.)

17

_ S/ Julie A. Robinson _____
Julie A. Robinson
United States District Judge